IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALEX HIGDON, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:15-CV-0287-TWT |
| | : | |
| JUDGE GAIL S. TUSAN, et al., | : | |
|     Defendants. | : | |

| | | |
|---|---|---|
| ALEX HIGDON, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:15-CV-3001-TWT |
| | : | |
| FULTON COUNTY, et al., | : | |
|     Defendants. | : | |

**OPINION AND ORDER**

**I. Background**

Proceeding pro se, the Plaintiff has filed several actions in this Court, all of which generally relate to his divorce/child custody dispute in Fulton County Superior Court. This Order concerns two of those cases, both of which assert claims under 42 U.S.C. § 1983. In Civil Action Number 1:15-CV-0287-TWT (the first case), the Plaintiff sued Fulton County Superior Court Judge Gail S. Tusan, Krystal M. Moore (who served as Judge Tusan's law clerk), Fulton County Superior Court Judge Bensonetta Tipton Lane, Fulton County Superior Court Judge Cynthia Wright, Fulton

AO 72A
(Rev.8/82)

County Superior Court Judge Todd Markle, Jennifer Ventry (who was Judge Markle's law clerk), Fulton County Superior Court Judge Kelly Lee Ellerbe, Beth Baer, (who was Judge Ellerbe's law clerk), Debra Beacham (who, according to the Plaintiff, is a marketing professional), Fulton County, and Fulton County Board Chairman John H. Eaves.  In Civil Action Number 1:15-CV-3001-TWT (the second case), the Plaintiff again sued Judges Tusan and Wright along with Chairman Eaves.  Also in the second suit, the Plaintiff appears to make various allegations against Fulton County, indicating that the Plaintiff intends suing Chairman Eaves in his official capacity.

The Defendants in both cases filed motions to dismiss for a variety of failings evident in the Plaintiff's pleadings, and this Court granted those motions.  The Plaintiff appealed, and the Eleventh Circuit determined that the orders dismissing the two cases contained an insufficient number of sentences and remanded both cases to this Court.  This Court again takes the Defendants' motions to dismiss into consideration with the goal of satisfying the apparent requirements of the Eleventh Circuit.

As noted, both cases concern his Fulton County divorce case before Judge Tusan and other judges.  For a short while, the Plaintiff had an attorney representing him in the divorce.  Fairly early in the process, however, the Plaintiff took over the case and represented himself.  According to his complaints, the Plaintiff has three children, and he is convinced that at least two of them suffer from autism and that they require

medical treatment so that they can be cured of their autism. The Plaintiff further claims that one of his children has been cured. It appears that the Plaintiff's former spouse does not believe that the children are autistic and/or that the children would benefit from the treatment that the Plaintiff seeks for them. This Court further takes judicial notice of the fact that legitimate scientific research has led to the generally-accepted belief that there currently is no cure for autism. The dispute regarding the children became the most heated point of contention in the divorce proceedings.

The 273-page amended complaint in the first case is an excessively long description of events and circumstances, much of which has no discernible connection to the Plaintiff's claims. The Plaintiff begins by discussing at length the actions taken by the guardian ad litem appointed to represent the interests of his children as well as the actions of his former spouse, his former spouse's divorce attorney, and the magistrate judge who initially presided over the divorce case. None of those individuals is named as a defendant in the Plaintiff's suits. The Plaintiff also provides an extended discourse regarding the actions of one of Judge Tusan's former law clerks that has nothing to do with the Plaintiff or his divorce action.

When the Plaintiff finally makes his way to discussing the actual Defendants in the first case, he claims that Judge Tusan, who was at the time presiding over his divorce proceedings, violated his constitutional rights because she would not let him

fully question witnesses during hearings; she ignored his arguments and pleadings; she would not allow him to make certain arguments; she would not allow him to present certain evidence; she failed to sanction his former spouse for failing to arrange for treatment and testing for the Plaintiff's children despite the fact that the judge had ordered her to do so; she allowed his former spouse to fail to turn over discovery; she refused to address the Plaintiff's motions for contempt; she (or perhaps Judge Lane) held the Plaintiff in contempt for failing to pay child support despite the fact that the evidence demonstrated that the Plaintiff's former spouse was lying and that he was not behind in child support payments; she violated judicial ethics by discussing the merits of his case with a television reporter; she deemed a habeas corpus petition which the Plaintiff filed against his former spouse to be frivolous; she refused to recuse herself; she placed a filing restriction on him which required him to get preauthorization before he could file pleadings;[1] and she improperly transferred the case to another judge.

Regarding Defendant Moore (Judge Tusan's law clerk) the Plaintiff claims that Ms. Moore contacted him because she was concerned about the unfair manner in which Judge Tusan had treated him. According to the Plaintiff, he had multiple conversations with Ms. Moore, at least some of which he recorded. The Plaintiff quotes from the

---

[1] This Court points out that it is readily apparent from reading the various complaints in this action that the Plaintiff filed a great many pleadings in his divorce action, one of which he describes as a habeas corpus petition against his wife.

recordings extensively. In the quotes, Ms. Moore generally says that Judge Tusan was biased against the Plaintiff because he is male and representing himself and that the filing restriction that she imposed upon him was illegal. The Plaintiff claims that Ms. Moore agreed to help him by testifying for him and providing him with evidence, but she later reneged on that deal.

The Plaintiff created a website, georgiacourtreview.com, and he put snippets of his recordings of Ms. Moore on the website. Judge Tusan got wind of this and called the Georgia Bureau of Investigation to have it investigate whether Ms. Moore had been engaged in wrongdoing with respect to the conversations. Judge Tusan later directed the GBI to drop the investigation. Judge Tusan then told Ms. Moore to cease her communications with the Plaintiff and demanded that she have the recordings removed from the internet.

At this point Defendant Beacham became involved. The Plaintiff describes Ms. Beacham in unflattering terms as one who seeks to assist individuals engaged in domestic litigation by advising them and finding them the appropriate attorney. According to the Plaintiff, Ms. Beacham got involved with Defendant Moore by trying to encourage the Plaintiff to remove the "exposé" from the internet, and threatened the Plaintiff by telling him that if he did not remove the exposé, that Ms. Moore would have him prosecuted for harassment. It is not at all clear what happened next, but Ms.

Moore appears to have filed charges against the Plaintiff for harassment in Fulton and Gwinnett Counties. Those charges were dropped. The Plaintiff claims that Ms. Moore and Ms. Beacham both made defamatory statements about the Plaintiff. Defendant Beacham told the media and others that the Plaintiff had assaulted Defendant Moore and that the Plaintiff was a "menacing [person] of ill repute."

Judge Lane, who appears to have inherited the case from Judge Tusan for a while, twice issued an order to incarcerate the Plaintiff after incorrectly finding that he had not paid attorneys' fees and child support. The Plaintiff claims that he filed a supersedeas and a notice of appeal to stay the contempt finding, but Judge Lane ignored it and had him detained. Judge Lane also improperly awarded attorneys' fees to the Plaintiff's opponents.

The Plaintiff also asserts various official capacity claims against the chairman of the Fulton County Board of Commissioners and the county itself. He claims generally that the county violated his rights in its failure to properly supervise the guardian ad litem system and the court.

In his prayer for relief in the first case, the Plaintiff seeks declaratory relief in the form of orders that would have the effect of overruling the orders issued by the Fulton County judges and to recover damages for a great variety of constitutional violations that purportedly interfered with his custody of his children.

In the complaint in the second case the Plaintiff first claims that existence of the Family Court Division operating as part of the Fulton County Superior Court violates the Georgia Constitution. According to the Plaintiff, a 1994 amendment to the state constitution permits the legislature to create specialty courts as pilot programs and that those courts must be of limited duration. The Plaintiff further claims that the most recent law passed by the state legislature creating the family court in Fulton County expired in 2010, and no replacement bill was passed. Rather, the Plaintiff claims, the Fulton County Superior Court judges passed a resolution creating a family division within the court subject to the approval of the Georgia Supreme Court. The state supreme court later approved of the resolution creating the family division. The Plaintiff asserts that family court is not a type of court that is permitted under the Georgia Constitution and that the Fulton Superior Court judges "usurped" the state legislature's authority to create courts of limited jurisdiction.

The Plaintiff next claims that the Family Division of the Fulton County Superior Court violates the rights of litigants because the judges allow matters to "languish" before the courts for years. At certain points, the Plaintiff seems to be promoting the rights of others similarly situated in class action form. A great deal of his discussion relates to cases that he was not involved in.

With respect to his divorce case, the Plaintiff appears to allege that Judge Tusan failed to rule on motions within ninety days, violating some rule or requirement for which the Plaintiff fails to provide a citation. The Plaintiff also again discusses his conversations with Ms. Moore, quoting the recorded conversations at length. The Plaintiff claims that Ms. Moore told him that Judge Tusan was "negligent" in her handling of numerous cases. She gave examples of cases that had a great many pending pleadings but where no hearing had been held. The Plaintiff also revisits his claim that Judge Tusan imposed improper filing restrictions on him, limiting his ability to file pleadings.

According to the Plaintiff, Fulton County has a "custom and practice of depriving the constitutional rights of Georgia citizens by violating judicial recusal and transfer/case management policies in order to protect and preserve conflict of interests related to the personal and political gain of . . . Defendants." According to the Plaintiff, judges recuse and transfer cases in order to conceal judicial misconduct.

In his divorce case, the Plaintiff claims that Judge Tusan failed to recuse when she should have, and he later complains that she improperly transferred her case to Judge Shoob in violation of an administrative rule imposed by the court. After Judge Tusan transferred the case to Judge Shoob, Judge Shoob transferred the case to Judge Lane. Judge Lane presided over the case even though she had a conflict of interest

because she had presided over and ruled improperly in the adjudication of Ms. Moore's temporary protective order against a former spouse. Judge Lane then improperly transferred the case to a judge visiting from Macon.

Concerning Fulton County, the Plaintiff claims the county failed to train, track and discipline judges and shielded judges from accountability for wrongdoing.

## II. Discussion

All Defendants except Ms. Beacham filed motions to dismiss. In those motions, the Defendants point out, and this Court agrees, that the Plaintiff has failed to state a claim for relief against any Defendant. Ignoring the fact that the complaints in both cases bear all the hallmarks of a classic shotgun complaint, all of the Defendants other than Ms. Beacham, Fulton County, and Chairman Eaves are absolutely immune from suit. State judges are absolutely immune from liability for their judicial acts. Stump v. Sparkman, 435 U.S. 349 (1978). This judicial immunity also extends to the agents and employees of the court, who are entitled to "absolute quasi-judicial immunity" from suit as to those actions taken while court employees are engaged in their "duties that are integrally related to the judicial process." Jenkins v. Clerk of Court, 150 Fed. Appx. 988, 990 (11th Cir. 2005); see also Carroll v. Gross, 984 F.2d 392 (11th Cir. 1993). All of the Plaintiff's claims against the various Fulton County judges relate to

rulings that those judges made or their failure to quickly rule on his motions. These are exactly the actions for which judges are shielded from liability.

In response to the Plaintiff's contention that judicial officers are not immune from claims for declaratory relief, this Court points out that in 1996 Congress amended 42 U.S.C. § 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The Plaintiff makes no allegation regarding the existence (much less the violation) of a declaratory order, and as the Fulton County Superior Court is a court of general jurisdiction, he cannot claim that declaratory relief was unavailable.

Moreover, this Court cannot grant the declaratory relief[2] that the Plaintiff seeks because it is barred under the Rooker-Feldman doctrine. Under the Rooker–Feldman doctrine, lower federal courts lack jurisdiction to exercise what would amount to appellate jurisdiction over final state-court judgments. Nicholson v. Shafe, 558 F.3d

---

[2] In his complaints, the Plaintiff demands declaratory orders that are too numerous to list. Each requested order would, if granted, directly infer the invalidity of a ruling or order made by a state court judge. For example, he seeks an order "declaring Plaintiffs [sic] right to free unfettered access to filing in the Fulton County Superior Court is valid and enforceable." He also seeks an order "declaring the [Judge Lane]'s August 15, 2014 order of contempt and incarceration on against [sic] the Plaintiff is void as [Judge] Lane did not have jurisdiction to initially file the order, nor did she have the discretion based on OCGA § 5-6-13 to deny his worthy filing of an Application for Supersedeas and Notice of Intent to Appeal."

1266, 1268 (11th Cir. 2009). All of the Plaintiff's requests for declaratory relief would require this Court to rule that an order of the state court was illegal, unconstitutional, or invalid, which the Rooker-Feldman doctrine prohibits.

As to the named law clerks, the only one mentioned in the complaints that did anything to the Plaintiff is Ms. Moore. None of the Plaintiff's allegations against Ms. Moore that could be even considered actionable concerns Ms. Moore acting under color of law. See Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995) ("[A]n otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state."). Certainly, it was not a part of her job description to engage in ex parte discussions with the Plaintiff. To fall within the traditional definition of acting under color of state law, a § 1983 defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Myers v. Bowman, 713 F.3d 1319, 1329 (11th Cir. 2013) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)). When she purportedly had him charged with harassment and defamed him,[3] she likewise was not engaged in official activity as she is not officially empowered with the authority

---

[3] To the degree that the Plaintiff might state a claim under state law against Ms. Moore, this Court points out that, because all of the Plaintiff's federal claims fail, this Court either lacks jurisdiction over any such potential state law claims or it chooses not to exercise supplemental jurisdiction over those claims.

to arrest. That she reneged on her agreement to provide the Plaintiff with discovery material and to testify for him simply fails to constitute a constitutional violation.

The Plaintiff makes no claims regarding Chairman Eaves in his individual capacity. The only allegations that could be considered claims against Chairman Eaves in his official capacity (as well as claims against Fulton County) relate to the Plaintiff's assertions regarding the fact that the family division violates the Georgia Constitution and the claims that Fulton County does not properly control its judges and court system and permits the judges to transfer cases in violation of court rules.

Regarding the Plaintiff's claim that the family division of the Fulton County Superior Court operates in an *ultra vires* manner, state law violations are not cognizable under § 1983. See Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983."). To the degree that this claim could be considered as stating a due process violation, the Plaintiff admits that the Georgia Supreme Court authorized the formation of the family division, and as a matter of federalism and comity, this Court is in no position to "reverse" the Georgia Supreme Court to conclude that the family division of the Fulton County court operates in violation of the Georgia Constitution. See *supra* discussion of the Rooker-Feldman doctrine.

This Court further concludes that the Plaintiff's novel official capacity claims asserting a right to recover based on county officials' failure to supervise the Superior Court is merely an attempt to make an end-run around the immunity that protects judicial officials; allowing such claims to proceed against Fulton County would have the effect of eliminating judicial immunity.

Finally, this Court has analyzed the Plaintiff's claims against Ms. Beacham. She is not a state official. See Fullman v. Graddick, 739 F.2d 553, 561 (11th Cir. 1984) (to successfully state a § 1983 claim, the plaintiff must allege that the conduct complained of was committed by a person acting under color of state law). While a private individual who conspires with a state official can be subject to § 1983 liability, see NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990), the Plaintiff's allegations that Ms. Beacham conspired with Ms. Moore fail to establish a claim because this Court has determined that Ms. Moore's potentially-actionable interactions with the Plaintiff were not part of her official duties, and allegations that a private party has conspired with a person acting in a private capacity does not state a claim under § 1983, Hendrickson v. Cervone, --- Fed. Appx. ---, 2016 WL 5349200 at *6 (11th Cir. Sept. 26, 2016).

Admittedly, as Ms. Beacham has not appeared in this action and has filed no motion to dismiss, this Court has no basis upon which to dismiss the Plaintiff's claims

against her. However, this Court further notes that, in violation of Federal Rule 4(l)(1), the Plaintiff has failed to file a proof of service demonstrating that Ms. Beacham has been properly served with process. Accordingly, unless the Plaintiff can demonstrate that he has properly served Ms. Beacham within 120 days of filing his complaint, this Court shall dismiss Ms. Beacham from this action pursuant to Rule 4(m).

In summary, this Court concludes that the Plaintiff has failed to state a claim against all Defendants. In its opinion remanding these cases back to this Court, the Eleventh Circuit mentioned that "[a] district court's discretion to dismiss a complaint without leave to amend is 'severely restricted,'" [Doc. 36 at 7], possibly implying that this Court should consider permitting the Plaintiff to amend his complaint prior to dismissing his claims. "While a pro se litigant must generally be given an opportunity to amend his complaint, a . . . court need not allow any . . . amendment [that] would be futile." Lee v. Alachua Cty., Fl., 461 Fed. Appx. 859, 860 (11th Cir. 2012). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed." Id. Having carefully considered the Plaintiff's factual allegations, this Court cannot discern how any amendment could possibly establish a viable basis for relief. This Court thus concludes that an amendment would be futile and leave to amend is denied.

### III. Conclusion

As discussed, this Court concludes that the Plaintiff has failed to state a claim for relief. The Defendants' motions to dismiss are again **GRANTED** and the above-styled cases are again **DISMISSED**, with the exception of the claims against Ms. Beacham. With respect to the claims against Ms. Beacham, the Plaintiff is **DIRECTED** to file with the Clerk, within one week of the date of this Order, an affidavit of service demonstrating that Ms. Beacham has been properly served. If the Plaintiff fails to file a proof of service within one week, the Plaintiff's claims against Ms. Beacham are **DISMISSED**.

SO ORDERED, this 10 day of February, 2017.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge